SMITH *versus* ABBOTT & *als.*

A person, against whom judgments have been obtained, can maintain no action of trespass on the case against the parties who obtained them, the attorney who prosecuted and the officer who served the writ, for fraudulently conspiring together to injure and defraud him in those proceedings, while the judgments remain unreversed.

*Judgments* cannot be reëxamined in this collateral way.

A declaration setting forth *no legal cause of action* should be taken advantage of by *demurrer*.

But when other pleadings are filed *to such defective declaration*, and upon its being read, a nonsuit is ordered, the plaintiff not being injured by the order, the nonsuit must stand.

ON EXCEPTIONS from *Nisi Prius*, HOWARD, J., presiding.

TRESPASS ON THE CASE, against Peter S. Ellis, Ephraim Woodman, Oliver O. Woodman, John S. Abbott and Robert A. Bird.

The writ alleged in substance that, on Sept. 25, 1841, the plaintiff gave his negotiable note to Benj. H. Ellis, since deceased, for $1500, payable in one year, in satisfaction of a claim of W. Weston & Co., against him, also his bond for the same sum in four months. That on Nov. 1, 1841, Weston & Co., commenced a trustee process against Benj. H., Peter S., and Joseph Ellis, and plaintiff, trustee, on a note of hand given by them to Weston & Co., for $4096,81, dated July 9, 1839; that on April 29, 1842, plaintiff purchased of Weston & Co., and had transfered and indorsed to him enough of said note to offset his note and bond, and caused the trustee suit to be discharged; that on May 5, 1842, he filed his bill in equity, praying that said Benj., Joseph and Peter S., might be restrained from disposing of the note and bond, and that the same should be surrendered up and canceled; that other persons were made parties to the bill, and among them Ephraim Woodman and Oliver O. Woodman, two of these defendants; that the said defendants in this bill in equity, conspired with J. S. Abbott, to cheat plaintiff, and prevent the set off by making false answers in said bill, said Abbott knowingly aiding them and drawing the answers for them, all of them well knowing that they were false and fraudulent upon the plaintiff, pretending a transfer for a valuable consideration of said $1500 note to said Ephraim and afterwards to Oliver O. Woodman; and that by reason of said fraudulent representation and conspiracy, the plaintiff failed to obtain said set-off or payment. And the plaintiff further averred that to execute the aforesaid fraud and conspiracy, the defendants caused a suit upon the note to be commenced against him in the name of Oliver O. Woodman, and attached his property to the value of $3000, also a suit upon the bond in the name of Benj. H. Ellis, falsely pretending that it was for the benefit of Ellis' assignees, and fraudulently and wrongfully obtained judgments in said actions, to the amount of $4000, thereby depriving plaintiff of his set-off, when, in fact, those claims were the property of said Benj., Joseph and Peter S. Ellis.

It was further averred that while the execution, in the name of Benj. H. Ellis, was in full force and in the hands of Robert A. Bird, a deputy sheriff, for collection, the said Ellis died, and on Oct. 13, 1850, for the purpose of avoiding any further proceedings thereon, the plaintiff paid to said Bird, under directions of said Abbott, $87,37.

It was further averred that said defendants, in prosecution of said conspiracy, did, by said Abbott, in Oct. 1850, cause said other execution, in the name of Oliver O. Woodman, to be placed in the hands of said Bird, for collection, with this order on the back thereof: — "Mr. Officer, — No part of the within belongs to the within named Woodman, and I am the attorney for the owners; you will, therefore, follow only my orders, and pay over only to me. Please seize defendant's stock in the Gas Co., and collect forthwith. J. S. Abbott, Att'y." And further, that he notified plaintiff, in writing, to make payment of the said executions to said Bird and to himself only; that neither Oliver O., nor Ephraim Woodman had any interest in the execution in favor of Woodman, beyond four or five hundred dollars, and the rest of the money due on both executions must fall into his hands to pay sundry debts and demands due from Ellis.

It was also averred, that said Oliver Woodman notified plaintiff not to pay this execution until certain arrangements were made, and that plaintiff, to avoid further sacrifice of his rights and property, paid Bird his fees and $100, for attorney's lien on execution, gave Bird a check on Oct. 31, 1850, for $2318,66, payable Dec. 2, 1850, duly guaranteed, as collateral security for the Woodman execution, and unless it was paid or discharged before the time it became due, Bird was to dispose of the check towards payment of the same; that plaintiff was notified by Shepley and Dana, attorneys of Ephraim and Oliver O. Woodman, to pay the check given to Bird, to R. A. Bird, personally, or to Oliver O. Woodman, personally, or to them, his attorneys, and to no other persons.

The declaration also alleged that the defendants well

knew that the estates of Benj. H. and Joseph Ellis were represented insolvent, and although the administrator caused to be inventoried, as the property of said estates, the two judgments aforesaid against the plaintiff, and returned the same, under oath, to the probate office, yet the plaintiff's claims to the amount of $5653,37 were allowed by the commissioners against said estates, instead of the balance that was due him, exceeding the judgments aforesaid; and in pursuance of said conspiracy, the administrator procured license from the Judge of Probate to sell the personal effects and credits of said estates, including the two judgments aforesaid, at public auction, and did so sell them, at one dollar each, to said Abbott; and by their fraudulent conspiracy, &c., obtained another judgment against the plaintiff, on the check aforesaid, and compelled him to pay large sums of money, all of which he was ready to verify, &c.

The defendants pleaded separately, the said Abbott, Woodmans, Ellis and Bird, the general issue, with a brief statement of their several special matters of defence to said suit. The plaintiff joined the issue, and filed counter brief statements.

Abbott and Ellis separately pleaded in bar to the action, to which plaintiff demurred, and they joined in demurrer.

On the reading of the writ and pleadings, the counsel for defendants moved for a nonsuit, which was ordered.

The plaintiff filed exceptions.

*J. S. Abbott*, for defendants.

*Smith, pro se.*

Rice, J. — The plaintiff in this case, appears to have been engaged in a series of law suits with a part of the defendants, in which several judgments, both in law and in equity, have been obtained against him. Those judgments all remain upon the records of the Courts in which they were rendered, unreversed, and their validity unimpaired. A history of the origin of this protracted litigation may be found in the case of *Smith, in equity,* v. *Ellis,* 29 Maine,.

422. In that case the question of fraud was distinctly before the Court.

The plaintiff brings this suit, not only against the parties with whom he has been in litigation, who are now living, and the representatives of such as have deceased, and their principal attorney, but includes the officers by whom precepts in these cases were served, charging all in one extended count, with conspiring together, fraudulently to wrong, injure and defraud him. If the declaration were free from defects, such an action, under such circumstances, cannot be maintained. While those judgments stand unreversed, the presumption of the law is, that they were fairly obtained; and this presumption is very strong when it appears, that the ground on which this action is now sought to be maintained was fully known and presented when those former actions were tried. Those cases cannot be re-examined in this collateral way. *Dunlap* v. *Glidden*, 31 Maine, 435.

At the trial, on the reading of the plaintiff's writ, and before any evidence was offered, a nonsuit was ordered by the presiding Judge. To this order the plaintiff excepted.

The proper way to take advantage of a declaration which does not set out any legal cause of action, is by demurrer. But when a nonsuit has been ordered in such case, the Court will refuse to set it aside on the ground of convenience, it being clear that the plaintiff cannot sustain a judgment upon such defective declaration. *Boyd* v. *Brent*, 1 Tread. Const. R. 101; *Martin* v. *Mitchell & al.*, Harp. R. 455.

There being no legal cause of action exhibited by the plaintiff's declaration, he has suffered no injury by the direction of the Court, and therefore has no cause for exceptions. *Exceptions overruled.*